# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BARBARA J. VAN DORN, an individual ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-3920 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| JOHN PETERS, an individual, KENNETH ) | |
| T. JAKUBOWSKI, an individual, and ) | |
| PETERS FINANCIAL GROUP, INC., an ) | |
| Illinois Corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On May 15, 2015, Plaintiff, Ms. Barbara J. Van Dorn ("Van Dorn") filed an Amended Complaint alleging, amongst others, claims of civil conspiracy (Count III) and aiding and abetting a breach of fiduciary duty (Count IX) against Defendants John Peters and Peters Financial Group, Inc. (collectively "Peters"). Van Dorn also alleged an additional claim of breach of fiduciary duty, Count II, against Kenneth T. Jakubowski ("Jakubowski"). Peters and Jakubowski moved separately for summary judgement as to Counts II, III, and IX, denying the conspiracy allegations and rejecting the proposition that Van Dorn was owed any fiduciary duty in this loan transaction. For the foregoing reasons, both Peters' and Jakubowski's Motions for Summary Judgement are denied.

**Background**

OneBig Tent, LLC ("OBT") was a Delaware start-up company operating in Chicago, IL. Jakubowski was the Chief Executive officer and sole-manager of OBT. Peters was an investor in OBT. Although he did not hold any official title, he regularly advised the company on structural and financial matters. Van Dorn was an investor who had previously invested in 5-10 small companies, including OBT, prior to 2012. By her own admission, she considered herself a "sophisticated investor."

In June of 2012, Jakubowski approached Van Dorn about investing additional funds into OBT; however, Van Dorn was reluctant. In an effort to move the deal forward, Jakubowski suggested that Van Dorn ask Peters whether he would be interested in guaranteeing the loan as he had done previously with another investor. On June 26, 2012, Jakubowski emailed Van Dorn to explain that the guaranty would be a separate agreement from the loan with OBT and to urge her to contact Peters directly to finalize the guaranty details. Van Dorn contacted Peters, who expressed interest in guaranteeing her loan.

Van Dorn contends that she told Peters and Jakubowski that she would not provide the loan without it being guaranteed. Throughout the negotiations, Van Dorn did not ask to see OBT's financial information or to find out why the company needed additional funds. She explained that she was not concerned about whether the company had outstanding debts or obligations prior to moving forward with the loan because she believed that the loan would be guaranteed. Jakubowski maintains that Van Dorn never unequivocally stated that her loan was contingent upon a guaranty. He does, however, admit that Van Dorn did not commit to invest in OBT this time until she was offered the guaranty option.

Jakubowski emailed Van Dorn on June 27, 2012 to ask if she could fund the loan by June 30, 2012. At this point, Jakubowski claims he was not aware of whether Van Dorn and Peters had finalized their guaranty agreement. Two days later Van Dorn informed Jakubowski that she needed additional time to review the guaranty and complete due diligence, so she could not fund the loan so quickly. That afternoon, Peters forwarded Van Dorn a draft of the guaranty. He had not looked at it yet, but he suggested they both take the weekend to review the document and discuss any changes the following Monday.

On July 2, 2012, Jakubowski sent Van Dorn an email with the finalized version of the warrant and promissory note; directions for funding the loan; and the draft of Peters' guaranty

2

agreement. Van Dorn responded to Jakubowski, stating that she had spoken to Peters that morning and the guaranty was acceptable. Peters was copied in this email. Following that exchange, Plaintiff authorized a wire transfer for the full loan amount of $200,000 without having the signed guaranty in hand. The money was funded to OBT on July 6, 2012. Van Dorn signed the guaranty on July 7, 2012 and emailed it to Peters. Peters never responded to that email or executed the guaranty.

After the July 2, 2012 communications, Peters did not have contact with Jakubowski or Van Dorn until July 10, 2012 when he responded to a string of emails between OBT's principals discussing the company's finances and the Van Dorn's loan. First, Peters sent an email to the entire OBT Finance Committee apologizing for not being "more a part of this conversation" because he had "been sick." (Dkt. 123-4). He also inquired into whether Van Dorn had sent the funds since he had "not signed the guarantee[sic] yet." (Dkt. 123-4). Peters sent a second email a few minutes later directly to Jakubowski telling him he was concerned about executing the guaranty since he was dissatisfied with Jakubowski's management. Peters suggested that Jakubowski meet with him the next day to discuss these reservations. Van Dorn was not included in either of the emails.

Jakubowski and Peters met near Peters' office on July 11, 2012 to discuss the current state of the company and the structural issues that Peters felt needed to be addressed in order for him to move forward with guaranteeing the loan. While Jakubowski admits that he and Peters had several conversations about OBT's financials prior to the loan being funded, these communications between July 10 and 11, 2012 were the first times that Jakubowski recalls Peters articulating any hesitation about guaranteeing the loan. Jakubowski did not take Peters' statements seriously and believed he was using threats to leverage power over OBT decision-making.

In her depositions, Van Dorn admits that she does not know when Peters first told Jakubowski that he was absolutely not going to execute the guaranty, or whether Peters and Jakubowski actually conspired to get Van Dorn to fund the loan without the guaranty. She also

3

admits that she has not seen any documents reflecting such agreements between Peters and Jakubowski.

Peters contends that he continued to do his due diligence into the financial health of OBT. Seeing that nothing changed, he lost confidence in OBT and personally decided he would not grant any additional guaranties or investments, including Van Dorn's loan between September and October of 2012. Peters did not, however, notify Jakubowski or Van Dorn of his decision at that time.

A year later, Jakubowski sent a letter dated September 24, 2013 to OBT investors informing them that OBT's "business model [wa]s not suited for today's market" and that he would be "[w]inding up the venture." (Dkt. 90-7). Upon receiving the news, Van Dorn sent Peters an email indicating that she "would like to move forward to collect [the loaned funds] under the terms" of the guaranty. (Dkt. 90-8). Peters did not respond.

On January 14, 2013, Paul Richards sent Peters a request for "the 'correct' descriptions for each of these investments or loans that were from 2012" via email. (Dkt. 123-4). Peters responded the same day asking him to "remove references to [his] guarantee[sic], at least with Sis" because he "[n]ever signed and [he] would not have [signed] given the actions of Ken at the time." (Dkt. 123-4). Peters explained that he "was going to bting[sic] this up but then [Van Dorn] funded anyway." (Dkt. 123-4).

Peters followed up with Jakubowski on January 24, 2013 about the 2012 investments and offered the following statement about the Van Dorn loan:

> . . . as far as [Van Dorn] is concerned, she chose to fund without being in possession of my guarantee[sic]. I actually had some issues at the time relative to your paying yourself, fiscal control and my concern that institutional funding was ambiguous (thus calling into question the likelihood that this would be an actual bridge loan which would be paid back on a timely basis), I would have insisted that those be cleared up prior to my signing. I was travelling and [Van Dorn] funded while I was away. I decided to let that sleeping dog lie, but I do not feel that I have any guarantee[sic] obligations at this time.

4

(Dkt. 123-4). Jakubowski was not convinced that Peters did not intend to guarantee Van Dorn's loan until May 6, 2015, when Peters sent him an email saying "that he unequivocally did not sign the guaranty." (Dkt 122-5, pp. 80:6-8, 81).

A year later, on January 6, 2014, Van Dorn sent Peters a certified letter as final notice to compel payment of her guaranty in full. Peters did not respond. Van Dorn called him on January 13, 2014 and remembers Peters admitted to a conversation he had with Jakubowski about the guaranty prior to her funding the loan. Peters memorialized that conversation in a letter, where he stated that he spoke to Jakubowski "[p]rior to [Van Dorn's] funding of the $200,000 loan" and "[he] expressed [his] concerns as to how previous investments were being used by the company." (Dkt. 123-4; Dkt. 90-3). The letter also stated that " [Peters] told [Jakubowski] that in light of [his] concerns, [he] would not be willing to sign a guaranty or provide any additional funding to the company." (Dkt. 123-4; Dkt. 90-3). In the letter, Peters also confirmed that he "was out of town when [Van Dorn] decided to fund the loan in July 2012" and while he "was admittedly surprised" to find out that the loan had been closed during that time, he surmised that she had "determined that it was a proper investment" for her. (Dkt. 123-4; Dkt. 90-3). Additionally, he informed Van Dorn, in the letter, that he had spoken with his attorney and was advised that "since [he] was neither an officer nor director . . . [he] should not voice . . .[his] concerns to any vendors or potential investors" as "they would ultimately make their own investment decisions." (Dkt. 123-4). Peters contends that at the time when he wrote the letter, he believed the dates and timing of the occurrences were accurate.

Later on May 31, 2017, Peters signed a declaration that attempted to clarify the exact timing of the events he identified in his letter from January 2014 to Van Dorn. He claimed that the inconsistencies "were based on [his] memory of events that took place in July of 2012 . . . [and that he] did not review any documents to confirm the timing of [his] correspondences with Jakubowski

5

in relation to Plaintiff's funding of the Loan prior to" discussing these matters with her. [Dkt 122-6].

The instant suit arises because Van Dorn believes that Defendants agreed and conspired to induce her to invest based on assurances of a guaranty that Peters had no intention of fulfilling. Defendants bring this motion arguing that Van Dorn has not provided sufficient substantive evidence to survive summary judgment.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex*, 477 U.S. at 324. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)(citation omitted). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done, judgment as a matter of law should be granted in its favor. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence that there is a genuine issue of material fact to survive summary judgment. *Roger Whitmore's Auto Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). "To determine whether genuine issues of material fact exist, we ask if 'the evidence

6

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (citing *Anderson*, 477 U.S. at 251-52).

**Discussion**

*Count III: Civil Conspiracy*

In the instant action, Van Dorn relies on the conversation and letter with Peters from January 2014 as a basis to support her theory that he decided not to guarantee her loan *before* she actually funded it. Van Dorn argues that Jakubowski and Peters conspired to conceal this fact in order to induce her to fund the loan without the benefit of the guaranty. Defendants now move for summary judgement on the civil conspiracy claim (Count III).

To make a showing of civil conspiracy, the facts must demonstrate: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Wagner v. Evans*, No. 15-cv-6165, 2016 U.S. Dist. LEXIS 11964, at *15 (N.D. Ill. Feb. 2, 2016) (citing Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1988)).

The timing of Peters' decision not to fund the loan and of his communication with Jakubowski are critical to this claim. The letter that Van Dorn relies on states definitively that Peters told Jakubowski prior to the funding of the loan that "in light of [his] concerns, [he] would not be willing to sign a guaranty or provide any additional funding to the company." (Dkt. 90-3). Both defendants maintained, in their depositions, that Peters had not definitely decided on whether to guarantee the loan until well after it was funded. They also offered emails sent after the loan was funded where Peters indicated that he was reluctant to guarantee the loan because of the financial state of OBT. Defendants' version of the evidence conflicts with the January 2014 letter that Peters sent to Van Dorn. The only evidence offered to cure the inconsistency in the timing of Peters'

7

decision was a "self-serving" declaration he executed on May 31, 2017 in preparation of litigation. Defendants offer no proof that the timing mentioned in the January 2014 letter was a mistake other than through their own depositions, which could also be construed as "self-serving" assertions. While it is well-established that uncorroborated, self-serving, conclusory assertions cannot defeat a motion for summary judgment, if they are based on personal knowledge or firsthand experience however, such assertions can be *evidence* of a disputed fact. *Berry v. Chi. Transit Auth.,* 618 F.3d 688, 691 (7th Cir. 2010). Defendants, conversely, have cited no authority that a "self-serving" assertion can be used to *eliminate* a disputed fact, especially when that fact is unfavorable to their cause. Reaching a conclusion here would require this Court to enter into the purview of the jury—weighing the value of the evidence and making a credibility determination. This is not appropriate for summary judgment. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003)(finding it to be "dangerous territory" for a court to weigh conflicting evidence during summary judgment).

As all inferences should be drawn in Van Dorn's favor, if the dates in the letter are taken as true, the inconsistency between it and the other evidence raises a question about when Peters actually decided not to guarantee the loan and whether he disclosed this decision to Jakubowski prior to the loan being funded. Since the timing and content of the conversation are critical to determining whether there was agreement prior to funding that would constitute a conspiracy, this conflict presents a question of material fact. Accordingly, neither Peters nor Jakubowski are entitled to summary judgment as to Count III.

*Counts II and IX: Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty*

Defendant Jakubowski moves for summary judgment on the breach of fiduciary duty claim (Count II) and Peters moves for summary judgment with respect to Count IX—aiding and abetting a breach of fiduciary duty.

A suit for breach of fiduciary duty is governed by the law of the state of incorporation. *CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209, 212 (7th Cir. 2011). As a Delaware corporation, Delaware law applies here and the default rule is that managers of a corporation have a fiduciary duty. *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012). The LLC Agreement ("Agreement") for OBT explicitly provides that managers have exclusive control over the company. As the manager operating OBT, Jakubowski has management authority and under Delaware law, owes a fiduciary duty to members and investors—a fact that Defendants have not contested.

"When fiduciaries communicate with their beneficiaries in the context of asking the beneficiary to make a discretionary decision . . . the fiduciary has a duty to disclose all material facts bearing on the decision at issue." *Metro Commc'n Corp. v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004). Corporate fiduciaries breach their duty of disclosure under Delaware law when they make "a materially false statement," "omit a material fact," or make "a partial disclosure that is materially misleading." *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009). A material fact is one that a reasonable person considers essential to her decision. *Id.* "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Gantler v. Stephens*, 965 A.2d 695, 710 n.44 (Del. 2009).

To to succeed on a claim of aiding and abetting a breach of fiduciary duty, Van dorn must also prove that Peters participated in the breach and that the breach caused damage. *CMS Inv. Holdings, LLC v. Castle*, No. 9468-VCP, 2015 Del. Ch. LEXIS 169, at *72 (Ch. June 23, 2015)

Under Delaware law, Jakubowski as the manager of OBT owed Van Dorn a fiduciary duty of full candor about any information that he knew to be material to the loan agreement. *See Kyle v. Appollomax, L.L.C.*, 987 F. Supp. 2d 519, 524 (D. Del. 2013). This presents two questions critical to resolving this factual inquiry—whether Jakubowski knew that Peters decided not to guaranty the

loan prior to funding and whether that guaranty was critical to Van Dorn moving forward with the loan.

As discussed above, the timing and content of the conversation between Jakubowski and Peters are material facts that remain unresolved. Given this conflict, if the conversation happened prior to Van Dorn funding on or about July 6-9, 2012, then the question remains whether Jakubowski had an obligation to disclose that information to Van Dorn before she acted. As a fiduciary, the law supports that he was obliged to disclose Peters' decision before Van Dorn funded had he known that the guarantee was critical to her decision. The facts are divided on the issue of whether the guaranty was material. Van Dorn alleges that she made it clear that she would not proceed with investing any more money without it being guaranteed. This is evidenced by the facts that she did not engage in serious talks with OBT until the guaranty was put on the table; she made reference to the guaranty throughout the negotiations; and she communicated directly with the guarantor, Peters, to set the terms. This intent was undermined by her decision to move forward without first getting the guaranty signed by Peters, and Peters' and Jakubowski's recollection that Van Dorn never explicitly stated that the guaranty was critical to the deal. The significance of the guaranty presents a question of material fact necessary to determine whether Jakubowski had a fiduciary duty to disclose Peters intentions to Van Dorn, and also the role, if any, that Peters played in enabling said a breach. Consequently, Jakubowski's motion to dismiss Count II and Peters motion to dismiss Count IX are denied.

**Conclusion**

Based on the foregoing, this Court denies both Defendants' Motions for Summary Judgment as to Counts II, III, and IX.

IT IS SO ORDERED.

ENTERED: SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 1/30/2018